U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 MAR 30 PM 4: 25

CLERK

BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

GEOFFREY L. THOMPSON, )
 )
   Plaintiff, )
 )
v. ) Case No. 5:13-cv-00318
 )
COMMISSIONER OF SOCIAL )
SECURITY, )
 )
   Defendant. )

**OPINION AND ORDER**
**(Docs. 11, 14)**

    Plaintiff Geoffrey Thompson brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits. Pending before the court are Thompson's motion to reverse the Commissioner's decision (Doc. 11) and the Commissioner's motion to affirm the same (Doc. 14). For the reasons stated below, the court GRANTS Thompson's motion, DENIES the Commissioner's motion, and REMANDS for further proceedings and a new decision.

**I.**    **Background**

    Geoffrey Thompson was sixty-two years old on his alleged disability onset date of June 15, 2009. On that date he suffered what was diagnosed as a lesion in his left cerebellar peduncle, or stroke. (AR 42, 339.)

    Thompson left high school in the eleventh grade to join the Navy. (AR 575.) He obtained his GED during his time in the Navy. (AR 41.) After serving for two years in the reserves, Thompson attended technical school and became an X-ray technician. (AR 41, 575.) He worked as an X-ray technician from around 1972 until the mid-1990s. (AR 575.) He was self-employed as a construction worker, doing painting and carpentry, from 1995 until 2010. (AR 41, 250.) Thompson stated that he ceased working after his stroke. (AR 42.)

1

In January 2008, Thompson was hospitalized for diverticulitis, a condition affecting the colon, which resolved with treatment. (AR 386.) He has been diagnosed with hypertension, periodic limb movement, tinnitus, and Dupuytren's syndrome, which caused lumps and weakness in his right hand. (AR 382, 388, 395.) Thompson has also been diagnosed with sleep apnea, although a split night polysomnography study found no evidence of obstructive sleep apnea or sleep disordered breathing. (AR 382, 596.)

Thompson is obese. His weight ranges between 300 and 313 pounds. (AR 243, 300.) He was a tobacco user until he quit in 2007. (AR 310, 318.) He was a heavy drinker until his stroke, after which he reduced his alcohol consumption. (AR 310, 575.) Thompson takes medications for iron deficiency, depression, digestive problems, and high blood pressure. (AR 14, 256.) He also uses a cane. (AR 47.)

Thompson lives in a house with his girlfriend. (AR 234.) On a typical day, he makes himself breakfast and lunch, watches television, cares for his cats, stores wood, reads, takes a nap, and helps his girlfriend make dinner. (*Id.*) He also shops for groceries and does laundry weekly, cleans monthly, and mows his lawn when needed, but indicated that he needs help and encouragement to complete those tasks. (AR 236.) Thompson's hobby is woodworking, and he makes Adirondack chairs. (AR 44.)

On December 14, 2009, Thompson filed an application for disability benefits under Title II of the Social Security Act, with an alleged onset date of June 15, 2009. (AR 10.) Thompson's date last insured was September 30, 2010, after which he was no longer eligible for disability benefits under Title II. (*Id.*) He claimed that he suffered dizziness, fatigue, numbness in his right hand, forgetfulness, and a constant hissing in his right ear. (AR 243, 254.) Thompson's application was denied initially and upon reconsideration, and he timely requested an administrative hearing. (AR 83, 99, 102.)

The hearing was conducted on June 19, 2012 by Administrative Law Judge ("ALJ") Thomas Merrill. (AR 37.) Thompson appeared and testified, and was represented by an attorney. (*Id.*) Thompson testified that he had trouble walking, and sometimes lost his balance because of dizziness. (AR 42.) He stated that he didn't sleep well and was very tired. (AR 42-43.) He also stated that his right eye went in and out of focus. (AR 46.) He further testified that

2

weakness in his right leg affected his gait, but that it had improved. (AR 47.) He also stated that he was distracted by ringing in his right ear, and that he had numbness and pain in his right hand and had recently been diagnosed with carpal tunnel syndrome. (AR 48-49.) He testified that he was forgetful and had short-term memory problems. (AR 49.) He identified his most significant problems to be lightheadedness, difficulty balancing, dizziness, and fear of falling. (AR 50.) Thompson's girlfriend, Sue Kremelberg, also testified at the hearing, as did a medical expert and a vocational expert ("VE"). (AR 19, 23, 39.)

The ALJ found that Thompson had not been disabled from his alleged onset date of June 15, 2009, through his date last insured, September 30, 2010. (AR 17.) The Appeals Council denied Thompson's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1.) Thompson appealed to this court on December 30, 2013. (Doc. 3.)

## II. The ALJ's Decision

"Disability" under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In evaluating disability claims the Commissioner uses a five-step procedure. *See Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004). At step one the ALJ must determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, step two requires the ALJ to determine whether he has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, at step three he determines whether the severe impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the most the claimant can do in a work setting despite his limitations based on the relevant evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the ALJ considers whether the claimant's RFC precludes the performance of his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). At the fifth and final step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proof in the first four steps; at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

Employing the five-step procedure, the ALJ first determined that Thompson did not engage in any substantial gainful activity between his alleged disability onset date of June 15, 2009 and his date last insured, September 30, 2010. (AR 12.) At step two, the ALJ found that Thompson had the following medically determinable impairments: "cerebral vascular accident, tinnitus, mild Dupuytren's contracture, depression, and cognitive disorder." (*Id.*) However, the ALJ found that Thompson did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for a period of twelve consecutive months, and therefore none of his impairments, alone or in combination, were severe. (*Id.*) Because he found that Thompson did not have a severe impairment at step two, the ALJ did not proceed to any subsequent steps of the analysis. He decided that Thompson had not been under a disability at any time from June 15, 2009 through September 30, 2010. (AR 17.)

### III. Standard of Review

This court reviews "the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable person might accept as adequate to support a conclusion.'" *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where there is substantial evidence

4

to support either position, the determination is one to be made by the factfinder." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). The court should keep in mind "the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

IV. **Analysis**

Thompson argues that the ALJ erred by failing to make any specific findings with regard to Thompson's obesity. (Doc. 11-1 at 11.) He also argues that the ALJ erred in concluding that he had no severe impairment or combination of impairments.[1] (*Id.* at 12.)

A. **Thompson's Obesity**

Thompson contends that the ALJ's failure to make a finding concerning Thompson's obesity warrants remand because it is contrary to Social Security Ruling 02-1p. Social Security regulations "consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability." SSR 02-1p. The Ruling instructs ALJs to conduct an "individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." *Id.* Thompson is correct that the ALJ should have explicitly considered his obesity in his decision.

As a threshold matter, the ALJ had sufficient notice that Thompson's obesity was a potentially severe medically determinable impairment that he should consider. Clinical assessments in Thompson's medical records consistently refer to him as overweight or obese and mention his need to lose weight. (*E.g.*, AR 301, 327, 460.) It is also clear that the ALJ was aware of Thompson's obesity at the hearing. The ALJ asked Thompson to provide his current height and weight, which Thompson gave as six feet and two inches, and three hundred and five pounds, respectively. (AR 52.) Although Thompson did not claim that his obesity was a severe impairment in his application, he submitted through his attorney a pre-hearing memorandum "which specifically raised obesity as a disabling impairment." (Doc. 11-1 at 11.) The record

---

[1] In the section of his brief devoted to this argument, Thompson mentions that his treating physician's opinion supported a finding of significant limitations, and that the ALJ gave her opinion limited weight. However, Thompson makes no argument that the ALJ's decision to give her opinion limited weight was error. The court therefore does not review the ALJ's consideration of Thompson's treating physician's opinion.

5

therefore provides ample evidence that Thompson was obese. *See* 20 C.F.R. § 404.1512(a) ("We will consider only impairment(s) you say you have or about which we receive evidence."); *see also Rockwood v. Astrue*, 614 F. Supp. 2d 252, 276-77 (N.D.N.Y. 2009) (noting that "a claimant's failure to present evidence of her obesity may excuse the ALJ from considering it" but concluding that "the record provided ample evidence to notify the ALJ that Plaintiff suffered from obesity, including a diagnosis from her treating physician").

It is important that an ALJ consider a claimant's obesity when determining disability because "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p. The ALJ's failure to make a finding at step two concerning Thompson's obesity requires remand because the record includes evidence suggesting that Thompson's obesity contributed to his complaints of fatigue and depression. For instance, agency consulting expert Andres Roomet, MD, described Thompson as "an obese, large man" and concluded that Thompson's fatigue "could be deconditioning and obesity in part." (AR 437-38.) Thompson's treating physician, Barbara Omara, MD, wrote in a letter conveying the results of a stress test, "You'll feel better when you've lost some more weight and built up your stamina a bit further." (AR 460.)

The ALJ also recognized that Thompson's weight may have been causing or contributing to some of his subjective complaints. In his decision, the ALJ cited with approval Dr. Omara's conclusion that Thompson's fatigue could be explained by the fact that he was "simply out of shape." (AR 15.) At the hearing, the ALJ asked medical expert Gerald Winkler, MD, whether Thompson's "weight and deconditioning" could be the problem behind his fatigue. (AR 68.) Winkler replied in the affirmative. (*Id.*) Dr. Winkler also testified that Thompson's "fatigue and need to rest" were "probably related to depression." (AR 67.) Social Security Ruling 02-1p explains that "[o]besity may . . . cause or contribute to mental impairments such as depression." Because he attributed some of Thompson's subjective complaints to his weight, and because he should have been aware that Thompson's obesity could have caused or contributed to his depression, the ALJ should have made a finding concerning Thompson's obesity. Enforcing the ALJ's obligation to explicitly consider obesity guards against the risk that a claimant's obesity is used to explain away his subjective complaints without being considered as an impairment in its own right. *See Macauley v. Astrue*, 262 F.R.D. 381, 389-90 (D. Vt. 2009) ("[H]ere the ALJ

6

appears to rely on Macaulay's obesity at several points in his written decision, but . . . did not recognize obesity as a 'medically determinable impairment' that could corroborate Macauley's subjective complaints of pain."); *see also* SSR 02-1p ("Obesity is a life-long disease. . . . [I]ndividuals with obesity generally need to stay in treatment or they will gain weight again.").

Although in some circumstances the ALJ's failure to address a claimant's obesity in his decision may be harmless error, those do not exist here. Other than the ALJ's passing reference to the fact that Thompson was "out of shape," he did not discuss Thompson's weight in his decision. The court thus cannot be sure that the ALJ sufficiently considered Thompson's obesity. *Cf. Vine v. Comm'r of Soc. Sec.*, No. 5:12-CV-0379, 2013 WL 3243562, at *4 (N.D.N.Y. June 26, 2013) (concluding ALJ's failure to list plaintiff's obesity as medically determinable impairment was harmless error where "the ALJ noted that the medical opinions all referenced Plaintiff's obesity and implicitly incorporated that condition into their findings").

Moreover, given the record evidence that Thompson's obesity may have been a causal factor behind his subjective complaints, a proper consideration of his obesity at step two could affect subsequent steps in the analysis. Obesity may, "alone or in combination with another medically determinable [physical or mental] impairment[,] . . . significantly limit[] an individual's physical or mental ability to do basic work activities." *Id.* In that case, a claimant would have a severe impairment, which would require the ALJ to proceed to step three of the five-step analysis. 20 C.F.R. § 404.1520(c) (A severe impairment is "any impairment or combination of impairments which significantly limits [a] claimant's physical or mental ability to do basic work activities.").[2] Were the ALJ to conclude that Thompson's obesity, alone or in combination with other impairments, constituted a severe impairment, he would be required to proceed to step three of the five-step analysis. *Cf. Day v. Comm'r of Soc. Sec.*, No. 3:05-CV-1271 (FJS/GHL), 2008 WL 2331401, at *5 (N.D.N.Y. June 3, 2008) (concluding ALJ's failure to make a finding concerning claimant's obesity was harmless error because there was "no evidence that Plaintiff's obesity—alone or in combination with any other impairments—had any effect on her ability to perform work-related activities").

---

[2] "Basic work activities" are "the abilities and aptitudes necessary to do most jobs," including "[p]hysical functions such as walking, standing, sitting, lifting, [etc.]", "[c]apacities for seeing, hearing, and speaking," and "[u]nderstanding, carrying out, and remembering simple instructions." 20 C.F.R. § 404.1521(b).

7

The ALJ erred in failing to make a finding regarding Thompson's obesity, and this error cannot be called harmless. On remand, the ALJ should make a finding concerning Thompson's obesity and should determine whether obesity, alone or in combination with other impairments, constitutes a severe impairment pursuant to Social Security Ruling 02-1p.

### B. The Severity of Thompson's Medically Determinable Impairments

Thompson also argues that the ALJ's finding that none of his medically determinable impairments was severe is not supported by substantial evidence. The court has concluded that on remand the ALJ must consider Thompson's obesity, alone and in conjunction with his other medically determinable impairments. The ALJ must therefore re-evaluate the severity of all of Thompson's medically determinable impairments in light of the fact that his obesity may contribute to their severity.

### V. Conclusion

For the reasons stated above, Thompson's motion to reverse the Commissioner's decision is GRANTED, and the Commissioner's motion to affirm is DENIED. The court REMANDS the matter for further proceedings and a new decision consistent with this opinion.

Dated at Rutland, in the District of Vermont, this 30th day of March, 2015.

_____
Geoffrey W. Crawford, Judge
United States District Court